## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ROBERT A. DOANE,** ) | **Civil Action No._____** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **1-800 REMODEL, INC.,** ) | |
| **ALAN HIRSCH,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT
### (with jury demand endorsed hereon)

Now comes Plaintiff, **ROBERT A. DOANE**, by and through undersigned counsel, and for his Complaint against Defendants 1-800 Remodel, Inc. ("1-800 Remodel") and Alan Hirsch ("Hirsch") states and avers as follows:

## INTRODUCTION

Plaintiff brings this action for breach of a settlement agreement entered into between Plaintiff and Defendants related to Defendants' illegal telemarketing activities in violation of the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), the Massachusetts Wiretap Act, M.G.L. c. 272, § 99C, et seq. ("MWTA"), the Massachusetts Privacy Act, M.G.L. c. 214, § 1B ("MPA"), and the Massachusetts Consumer Protection Act, G.L. c. 93A ("MCPA or M.G.L. c. 93A").  The settlement agreement likewise addressed Defendant 1-800 Remodel's repeated failure to comply with the United States Court of Appeals for the Ninth Circuit's order to pay Plaintiff the sum of $16,200.00 in attorney's fees incurred in defense of 1-800 Remodel's

frivolous appeal in the case of *1-800 Remodel, Inc. v. Robert Doane*, Case No. 18-56181.
Plaintiff seeks damages resulting from the breach and specific performance of the non-monetary
provisions of the settlement agreement.

## THE PARTIES

1.      Plaintiff, Robert A. Doane ("Doane" or "Plaintiff"), is, and was at all relevant times, a
citizen of the Commonwealth of Massachusetts with a residence at 103 Prospect Street,
Wakefield, Massachusetts 01880.  Plaintiff likewise has a residence at 21 New Lane, West
Tisbury, Massachusetts, 02575.

2.      Defendant 1-800 Remodel, Inc.  ("1-800 Remodel") is a domestic corporation, organized
and existing under the laws of the State of California with its principal place of business located
at 5850 W. 3rd Street, #160, Los Angeles, CA 90036.  Plaintiff states upon information and belief
that all shareholders and control persons of 1-800 Remodel are citizens of the State of California.

3.      Defendant Alan Hirsch ("Hirsch") is a citizen of the State of California with his residence
at 329 N. Fuller Ave., Los Angeles, CA 90036.  At all relevant times, Hirsch was 1-800
Remodel's Chief Executive Officer and had exclusive control over the activities of 1-800
Remodel and personally directed, authorized, and ratified each act of 1-800 Remodel complained
of herein.

4.      Whenever in this Complaint it is alleged that Defendants committed any act or omission,
it is meant that Defendants' officers, directors, agents, servants, or employees, subsidiaries, or
affiliates committed such act or omission and that at the time such act or omission was
committed, it was done with the full authorization, ratification or approval of Defendants or was
done in the routine normal course and scope of employment of Defendants' officers, directors,
agents, servants, or employees.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves violations of the TCPA and an order of the United States Court of Appeals.   Plaintiff states in the alternative that this Court has subject matter over this action pursuant to 28 U.S.C. § 1332 because this is a suit between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

6.      This Court has general jurisdiction over Defendants as Defendants engaged in nationwide telemarketing efforts and conduct, including in this District.

7.      This Court has personal jurisdiction over Defendants because Defendants attempted to and did conduct business in this District and have continuous and systematic contacts with this District through their telemarketing efforts, including, among other things, directing and causing to be made unsolicited and automated sales calls that specifically target consumers in this District.  Further, the wrongful conduct giving rise to the claims asserted herein occurred in and was directed to this District and involve a Massachusetts consumer.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in and was directed to this District.

## FACTUAL ALLEGATIONS

### A.      Defendants' Illegal Telemarketing Practices.

9.      1-800 Remodel is, and was at all relevant times, a marketing company that generates and sells home improvement and remodeling leads for contractors across the country.

10.     At all relevant times, in order to generate home improvement and remodeling leads, Defendants utilized overseas telemarketers (the "Telemarketers") to repeatedly, harassingly,

deceptively, and illegally place hundreds of thousands of calls to consumers nationwide, including Massachusetts consumers, utilizing caller-id spoofing (a process that displaces the actual caller identification with a fake local caller identification), and robocalls using automatic telephone dialing systems ("ATDS").

11.    At all relevant times, including but not limited to 2017 and 2018, Defendants authorized the Telemarketers to solicit business on their behalf through use of telemarketing, and Defendants had control over the Telemarketers' actions on their behalf.  For example:

      a.    Defendants limited the type of consumers the Telemarketers could solicit.

      b.    Defendants directed the geographical areas where the Telemarketers solicited.

      c.    Defendants provided the scripts and sales pitches for the Telemarketers.

      d.    Defendants instructed the Telemarketers with respect to the volume of telemarketing calls and the methods to be utilized.

      e.    Defendants had day-to-day control over the Telemarketers' actions, including the ability to prohibit the Telemarketers from using an ATDS, illegal spoofing, and other illegal methods to contact potential customers.

12.    Although Defendants either knew or should have known of the provisions of the TCPA and MTSA, Defendants, at all relevant times, directed their Telemarketers to generate leads by using methods that violate the substantive provisions of the TCPA and MTSA.

13.    The calls placed to Plaintiff that were the subject of the settlement agreement with Plaintiff were within the scope of the Telemarketers' job duties and the actual or apparent authority the Defendants provided to the Telemarketers.

14.     At all relevant times, Defendants profited from the Telemarketers' aforementioned efforts

and ratified the actions of the Telemarketers by knowingly accepting the benefits of the

Telemarketers' illegal activities.

15.     As a result of Defendants' illegal telemarketing activities, 1-800 Remodel has received

numerous consumer complaints, including the following complaints to the Better Business

Bureau:

---

10/04/2021

I was searching for home and pool remodeling professionals using only local Las Vegas platforms but, somehow 1800remodel in Florida got ahold of my number. I NEVER requested a bid, quote or more information from them nor did I ever provide mine. They have been calling me every morning including Saturdays and Sundays starting at 4 AM PST, again at 5:30 AM, 7 AM, 9 AM and than again beginning around 1 PM into the evening. I am a clinical psychologist so I can't turn my phone off. I have not been able to have more than a few hours sleep in 2 WEEKS! THIS IS HARASSMENT! I block one of their numbers they start calling from another one. I have repeatedly requested that they STOP and remove me from their call list, explaining they are harassing me and waking me up. I either get a rude, nasty response or hung up on. Please tell me this isn't legal... These calls, and the subsequent lack of sleep due to them, has begun to impair my activities of daily living[1].

---

06/16/2020

I have asked multiple times to be taken off of these people's contact list but they continue to call. Approximately two weeks ago, I provided 1800remodel with my contact information. I mistakenly believed that they were a reputable local company that could provide a guttering quote for me. What I found out is that they are a third-party marketing company thousands of miles away. I have since been inundated with nuisance phone calls nearly every day. I have asked at least four times to to be removed from their list and not be called again. This morning, a Sunday, I received a call at 8:08 AM followed by a call at 8:20 AM. I demanded to have my information removed again. I would like to have my case resolved and I really wish I could warn other people not to contact this misleading company[2].
**Desired Outcome**
Stop the ridiculous phone calls.

---

02/28/2020

---

[1] https://www.bbb.org/us/ca/los-angeles/profile/home-improvement/1-800 Remodel-inc-1216-265421/complaints
[2] https://www.bbb.org/us/ca/los-angeles/profile/home-improvement/1-800 Remodel-inc-1216-265421/complaints

Non-Stop Calling About 3 years ago (2018) I unwittingly put my phone number into a website that this company advertised with. Since that time, they have spoofed phone numbers in the 208 area code in order to try and telemarketing without authorization using robo callers. Since most of their operators are apparently from India, they are not even smart enough to realize that they are talking with a robot that was put into place because of the twice a day phone calls (one at exactly 8am and another at noon). The last phone call message that was received was for 1067 seconds (all recorded) and this company attempts to robo sell without explicit approval in violation of the do not call list. I have noticed other BBB reporters saying the same thing and this company's excuses are lies. If the BBB would like, I can supply hundreds of unauthorized phone call recordings initiated by 1800remodel. This is a scam company that daily violates Federal Law and should be held accountable.

**Desired Outcome**
Quit violating state and federal law in robo call phone solicitations[3].

---

06/14/2019

continuously call after being told I'm not interested in new windows and to remove me from their call list. In violation of Do Not Call list. They called wanting to sell me new windows, I told them not to call again. They continue to call at least 3x a week, I've blocked their calls but can't block voicemails. Called them again today, the guy said he would remove my number but no doubt I'll still get calls from them. I've never done business with these telemarketers, they are in violation of Do Not Call List.

**Desired Outcome**
quit violating DO NOT CALL LIST[4]

---

5/07/2019

Unwanted and Harassing Calls all day long 1800Remodel agents have been calling me all day every day for the past 2 weeks. They ask for me by my name so I told them they did not know me well enough to use my first name. I've asked the reps to remove me from their list and to cease calling off their robocalls. 800remodel using 4 free tickets to Six Flags to gain customer personal information to make the calls. My phone number was spoof under the deception of it coming a local area (XXX-XXX-XXXX) The sales tactics they are using sends up a red flag for me. On 04/26/19, I contacted them to stop calling my home

**Desired Outcome**
Stop all calls to me because I have any interest in doing business with a crooked company as theirs. Remove my phone the Robocall list off and never call me again[5].

---

[3] https://www.bbb.org/us/ca/los-angeles/profile/home-improvement/1-800 Remodel-inc-1216-265421/complaints
[4] https://www.bbb.org/us/ca/los-angeles/profile/home-improvement/1-800 Remodel-inc-1216-265421/complaints
[5] https://www.bbb.org/us/ca/los-angeles/profile/home-improvement/1-800 Remodel-inc-1216-265421/complaints.

**B.**     **Harassing Calls to Plaintiff and First Settlement Agreement.**

16.     Plaintiff is an individual who suffers from chronic pain and a sleep disorder and often sleeps during the day.  Plaintiff is also the trustee of several trusts and at the time of the illegal calls in question, was the primary caretaker and power of attorney for his two elderly parents.  In these capacities, Plaintiff was required to keep his cellphone on his person at all times so he could attend to the needs of the trusts and direct the care of his family members.

17.     At all times relevant, Plaintiff's cell phone number, 781-245-xxxx ("Cell Phone"), which is used solely for residential purposes, has been registered to a "do not call list" maintained by the Federal Trade Commission ("FTC") and the Massachusetts Do Not Call registry, as Plaintiff does not wish to be disturbed and harassed by telemarketers.

18.     Prior to March 10, 2017, Plaintiff received scores of harassing and unsolicited calls to the Cell Phone from Defendants and their agent Telemarketers.

19.     After determining that Defendants were responsible for the aforementioned illegal telemarketing activity, Plaintiff sent Defendants a demand (the "First Demand Letter") and thereafter entered into a settlement agreement with Defendants on March 10, 2017 (the "First Settlement Agreement").

20.     The First Settlement Agreement contained a release provision whereby Plaintiff released 1-800 Remodel "from any and all claims, demands, and causes of action . . . that [Plaintiff] ever had, or now has, or may have, whether known or unknown, that have been raised or that may have been raised at any time through and up to the Effective Date of [the] Agreement [i.e., as of March 10, 2017]."

**C.      Defendants Continue to Call and Harass Plaintiff and File a Frivolous Strike Suit Against Plaintiff in the Central District of California.**

21.      Having apparently taken no steps to correct their unlawful practices following the First Settlement Agreement, in late 2017 and 2018, Plaintiff once again began to receive unsolicited and harassing telemarketing calls from Defendants.

22.      On March 13, 2018, Doane emailed 1-800 Remodel another pre-suit demand letter (the "Second Demand Letter") to complain about the calls he was receiving and demanding $35,000.00 in statutory and compensatory damages.  By way of this demand letter, Doane specifically identified the calls he was complaining about as having occurred "over the course [of] late 2017 and early 2018."  As plainly evident from the Second Demand Letter, none of the calls complained of occurred prior to the effective date of the First Settlement Agreement.

23.      On March 19, 2018, Plaintiff received an email from counsel for 1-800 Remodel, requesting additional time to respond to Plaintiff's Second Demand Letter.  Plaintiff granted the requested extension of time, but no response was received.  Instead, on April 4, 2018, Plaintiff was told that 1-800 Remodel's counsel had been busy and that he would get back to him in a couple more days (by April 6, 2018).

24.      On April 5, 2018, instead of responding to Plaintiff's Second Demand Letter as 1-800 Remodel's counsel said it would do, 1-800 Remodel filed a lawsuit ("the California Lawsuit") against Plaintiff in the United States District Court for the Central District of California.

25.      The California Lawsuit alleged two causes of action against Plaintiff for declaratory judgment.

26.      As the California Lawsuit was entirely frivolous, on May 24, 2018, Plaintiff moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 12(b)(2) for

lack of personal jurisdiction and pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction.

27.     By an order dated July 31, 2018, the district court, Judge Dean D. Pregerson presiding, predictably dismissed 1-800 Remodel's Complaint for lack of personal jurisdiction against Plaintiff, finding that Plaintiff neither directed activity at California nor purposefully availed himself of the benefits of California law.

**D.     Defendants Appeal the District Court's Decision and 1-800 Remodel is Sanctioned By the 9th Circuit Court of Appeals.**

28.     On August 30, 2018, 1-800 Remodel filed a notice of appeal from the district court's dismissal and on December 17, 2018, 1-800 Remodel filed its opening brief.

29.     After causing Plaintiff to incur considerable expense responding to its brief, 1-800 Remodel's appeal was dismissed for failure to prosecute on June 11, 2019.

30.     Following the dismissal, Plaintiff filed a motion for sanctions against 1-800 Remodel in accordance with Rule 38 of the Federal Rules of Appellate Procedure requesting an award of attorney's fees.

31.     On September 17, 2019, the 9th Circuit Court of Appeals granted Plaintiff's motion for attorney's fees and referred the matter to the Appellate Commissioner for a determination of the amount of the fees.  Appellate Commissioner Peter Shaw thereafter awarded Plaintiff fees in the amount of $16,200.00 by order of August 27, 2020 (the "Sanction Order").   A copy of this order is attached herewith as Exhibit A and incorporated by reference.

**E.     Defendants Agree to Settle Claims.**

32.     After receiving the Sanction Order, Defendants did not comply and ignored Plaintiff's demands for payment.  Defendants likewise refused to address Plaintiff's claims for violations of the TCPA, MTSA and MCPA, outlined in his Second Demand Letter of March 13, 2018.

33.    Given Defendants' refusals, Plaintiff served Defendants and 1-800 Remodel's officers and control persons a subsequent M.G.L. c. 93A demand letter on July 6, 2021 ("93A Demand"). A copy of this letter is attached herewith as Exhibit B and incorporated by reference.

34.    Following receipt of the 93A Demand Letter, the Defendants entered into settlement discussions with Plaintiff.   As part of these negotiations, Plaintiff proposed the following resolution of all outstanding claims by letter of October 28, 2021 (the "Settlement Offer"):

a.    Plaintiff demanded that 1-800 Remodel agree to pay his attorney fees resulting from their frivolous litigation in California against Plaintiff, in the amount of $32,362.84, subject to 12% simple interest, incrementally, commencing with a payment of $2,500, with payments to be made monthly thereafter in the amount of $1,000, until fully paid.

b.    Plaintiff demanded that in the event of a breach of the payment terms that 1-800 Remodel, as well as Hirsch, agree to be jointly and severally liable for the payment of the entire remaining balance left in attorney fees and reasonable attorney fees in collecting this amount, and would likewise agree to be subject to personal jurisdiction in Massachusetts.

c.    Plaintiff demanded that 1-800 Remodel agree to provide an affidavit describing all facts related to the leads involving Plaintiff described in the First Demand Letter and the Second Demand Letter, specifically naming all identified upstream parties, disclosing all communications with those upstream parties, and fully cooperating with any subsequent requests for information or documents and ESI related to such lead providers.

d.    Plaintiff offered on the condition that 1-800 Remodel complied with the above terms, that the monetary demands in the Second Demand Letter would be waived.  In the event, however, that 1-800 Remodel breached the payment terms, Plaintiff demanded that 1-800 Remodel agree to pay damages for the release of the claims described in the Second Demand

Letter in the amount of $35,000, within ten days of a demand for payment of said amount, and in the event 1-800 Remodel failed to timely pay in accordance with that demand, Defendants would agree to be jointly and severally liable for the payment of such damages and reasonable attorney fees in collecting payment, and would likewise agree to be subject to personal jurisdiction in Massachusetts.

35.     After receipt of the Settlement Offer, Hirsch agreed to speak with Plaintiff on October 31, 2021, to attempt to finalize the agreement.  During the course of this conversation, Hirsch, both personally and on behalf of 1-800 Remodel, agreed to the terms of the Settlement Offer (the "Second Settlement Agreement").

36.     To confirm Defendants' agreement to the terms of the Second Settlement Agreement, Plaintiff sent the following email to Hirsch on November 1, 2021, at 9:00 PM:

> Alan,
>
> This is to confirm that you have agreed to the essential terms outlined in my offer letter dated October 28, 2021.   Accordingly, I will draft an agreement to memorialize our agreement reflecting those terms.
>
> Further, we discussed the possibility of an agreement whereby you would be provided a future release, and in return, in the event of your receipt of leads or call transfers involving my number, you would identify the source of those leads and call transfers. I can propose terms with regard to this.
>
> Please reply confirming our understanding.
>
> Thank you.

37.     In response to Plaintiff's aforementioned email of November 1, 2021, Hirsch responded as follows thirty minutes later:

"Yes, thnx."

38.     Since the time of the Second Settlement Agreement, Defendants have refused and continue to refuse to execute a written settlement agreement or comply with the terms of the agreement.

39.     Since the time of the Second Settlement Agreement, Defendants have refused and continue to refuse to make the agreed-upon payments to Plaintiff.

## FIRST COUNT
### Breach of Contract
### (As Against Both Defendants)

40.     Plaintiff incorporates the averments contained in paragraphs one (1) through thirty-nine (39) of the Complaint as if fully rewritten hereunder.

41.     Plaintiff has fully performed under the terms of the Second Settlement Agreement.

42.     Defendants have purposely, intentionally, and willfully breached the Second Settlement Agreement by failing and refusing to perform under the terms the Second Settlement Agreement.

43.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered loss of the benefit of his bargain and incurred attorney's fees, expenses, and other damages in an amount to be established at trial.

## SECOND COUNT
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (As Against Both Defendants)

44.     Plaintiff incorporates the averments contained in paragraphs one (1) through forty-three (43) of the Complaint as if fully rewritten hereunder.

45.     As a matter of Massachusetts law, the covenant of good faith and fair dealing is implied in every contract.  Thus, the Second Settlement Agreement is subject to the implied covenant.

46.     The implied covenant provides that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, and exists so that the objectives of the contract may be realized.

47.     A breach occurs when one party violates the reasonable expectations of the other.  In determining whether a party violated the implied covenant of good faith and fair dealing, the parties' performance and enforcement under the contract is evaluated, and there is no requirement that bad faith be shown; instead, the lack of good faith is the gravamen.

48.     Defendants, individually and by and through the acts and omissions of their agents, officers, employees and control persons, breached the implied covenant of good faith and fair dealing by purposely and intentionally refusing to perform under the Second Settlement Agreement.

49.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been denied the benefit of the Second Settlement Agreement and suffered harm in an amount to be established at trial.

**THIRD COUNT**
**Violation of M.G.L. c. 93A, §§ 2 & 9**
**(As Against Both Defendants)**

50.     Plaintiff incorporates the averments contained in paragraphs one (1) through forty-nine (49) of the Complaint as if fully rewritten hereunder.

51.     At all relevant times hereto, Defendants were engaged in trade or commerce.

52.     Defendants themselves and by and through their employees, agents, officers and control persons, have engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, § 2 by way of their purposeful refusal to perform under the terms of the Second Settlement Agreement.

53.    This conduct falls within the penumbra of common law, statutory or other established concepts of unfairness and represents, immoral, unethical, oppressive, and unscrupulous conduct. This conduct is also otherwise oppressive and unconscionable.

54.    This conduct constitutes knowing and intentional, unfair and deceptive trade practices in violation of M.G.L. c. 93A, § 2.

55.    As a direct and proximate result of the Defendants' conduct in violation of M.G.L. c. 93A and the regulations promulgated thereunder, Plaintiff has suffered substantial financial losses and other harm.

   **WHEREFORE**, as to all Counts, Plaintiff requests that this Court:

1.    Enter judgment for Plaintiff against Defendants jointly and severally;

2.    Award Plaintiff his actual, compensatory, punitive and special damages to be determined at trial in an amount of at least $100,000.00;

3.    Find that Defendants' actions complained of were willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award Plaintiff treble damages;

4.    Issue a permanent injunction enjoining Defendants from nonperformance of the Second Settlement Agreement;

5.    Award Plaintiff his reasonable costs, expert fees, attorney fees, and expenses under Chapter 93A and in accordance with the terms of the First and Second Settlement Agreement; and

6.    Award Plaintiff such other and further relief as Plaintiff may be entitled at law or in equity.


**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**

Dated: March 4, 2022                Respectfully submitted,

/s/ Richard B. Reiling
Richard B. Reiling (BBO# 629203)
**BOTTONE | REILING**
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 412-4291
Facsimile:  (617) 412-4406
Email: richard@bottonereiling.com

***Plaintiff's Counsel***